IN THE UNITED STATES BANKRUPTCY
COURT FOR THE DISTRICT OF MARYLAND
(Baltimore)

| | | |
|---|---|---|
| IN RE JOHN M. MCPHERSON | * | Case No.: 21-10205 |
| | * | |
| Debtor, | * | |
| * * * * * * * | * | |
| JOHN M. MCPHERSON | * | Adv. No. |
| | | |
| Plaintiff, | * | |
| v. | | |
| | * | |
| CAMAC FUND, L.P. | | |
| BERMAN TABACCO | | |
| | | |
| Defendants. | * | |
| * * * * * * * | * * * * * * | |

## COMPLAINT

John M. McPherson (the "Debtor"), by his undersigned counsel, files this adversary complaint (the "Complaint") against Camac Fund, L.P. ("Camac") and the Berman Tabacco law firm, and alleges as follows:

## NATURE OF THE ACTION

1. In this action, the Debtor, for and on behalf of his bankruptcy estate, seeks (a) a determination that a purported lien claimed by Camac on certain of the Debtor's assets are avoidable because Camac only filed a Uniform Commercial Code ("UCC") financing statement within 90 days prior to the Petition Date; (b) the avoidance and cancellation of the obligation incurred under the Litigation Funding Agreement as a constructive fraudulent conveyance; (c) the turnover of monies due to the Debtor by Camac and Berman Tabacco; (d) the disallowance

of Camac's claims against the Debtor, and (e) to the extent Camac is allowed any claim against the Debtor, the reduction of said claim by setoffs due by Camac to the Debtor and the subordination of any such allowed claim to the payment of all other general unsecured creditors.

## JURISDICTION AND VENUE

2. This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §157(a) and (b) and 1334(b).

3. The statutory and legal predicates for the relief sought herein are Sections 510, 542, 543, 544, 547, 551, and 553 of the Bankruptcy Code.

4. Venue is proper in this district pursuant to 28 U.S.C. §§1408 and 1409.

5. This adversary proceeding is a core proceeding that can be heard and determined by the Court pursuant to 28 U.S.C. §157 and the Court may enter final orders for the matters contained herein.

## PROCEDURAL BACKGROUND AND PARTIES

6. On January 12, 2021 (the "Petition Date"), the Debtor filed a voluntary petition for relief in this Court under Chapter 11 of the Bankruptcy Code.

7. The Debtor is an individual and a resident of Maryland. The Debtor worked as a forensic accountant for many years. Approximately a decade ago, the Debtor shifted his labors toward identifying, researching, and pursuing "whistleblower" type claims through the Securities and Exchange Commission and other governmental agencies.

8. Camac is a company existing under the laws of Delaware.

## BACKGROUND FACTS

9. On January 4, 2018, the Debtor and Camac entered into a Litigation Funding Agreement (the "Funding Agreement"). Pursuant to the Funding Agreement, Camac agreed to pay to the Debtor the sum of $1 million to be used by the Debtor to fund his business operations and to pay outstanding tax liabilities owed by the Debtor to the Internal Revenue Service and the State of Maryland.

10. In exchange for providing the Debtor with $1 million in funding, Camac was entitled to a share of any "Litigation Proceeds" received by the Debtor from any "Cases" as defined in the Funding Agreement, which, in essence, were any "whistleblower" type claims successfully pursued by the Debtor. The Funding Agreement provides that Camac was to receive the following amounts, depending on the year in which the Debtor received any proceeds from the Cases:

$1.375 million if paid during 2018.

$2 million if paid during 2019.

$3 million if paid during 2020.

$4.2 million if paid during 2021.

$5.95 million if paid during 2022.

$8.65 million if paid during 2023 or thereafter.

11. Pursuant to the Funding Agreement, Debtor granted to Camac a first priority security interest in the Litigation Proceeds. Camac did not file a UCC financing statement to perfect its purported lien when it executed the Funding Agreement in January 2018.

12. Camac filed a UCC financing statement in Puerto Rico on November 16, 2020. Camac also filed UCC financing statements in Maryland on November 17, 2020 and December 3, 2020. All of the foregoing are hereinafter collectively referred to as the "Financing Statements".

13. Camac failed to provide the Debtor with the $1 million in funding required by the Funding Agreement. In fact, Camac only provided the Debtor with funding of $310,829. Despite having failed to fulfill its obligations under the Funding Agreement, Camac asserts a claim against the Debtor of $4.2 million.

14. Prior to the Petition Date, Camac asserted that the Debtor breached the Funding Agreement and commenced an arbitration proceeding before the American Arbitration Association.

## **CLAIMS FOR RELEIF**

### **Count I**

### **(Avoidance of Preferential Transfer)**

15. The Debtor repeats the allegations in each of the foregoing paragraphs, which are incorporated by reference as if set forth fully herein.

16. To the extent they would otherwise have been effective to perfect a lien in favor of Camac on the Litigation Proceeds and/or the Cases, the Financing Statements constituted a transfer of property, or an interest in property, of the Debtor.

17. Pursuant to Bankruptcy Code section 547(e)(2)(B), the transfer of a lien is deemed to have occurred on or about when such financing statement was filed and Camac's liens were first perfected under the UCC.

18. At all relevant times, Camac was a creditor of the Debtor in respect of its purported entitlement to a share of Litigation Proceeds received by the Debtor.

19. The transfer was made to or for the benefit of Camac.

20. The transfer was made for or on account of an antecedent debt owed by the Debtor to Camac in respect of its purported entitlement to a share of Litigation Proceeds received by the Debtor.

21. The transfer was made within 90 days of the Petition Date.

22. At the time of the transfer, the Debtor was insolvent.

23. As a result of the transfer, Camac received more than it would have received if the Debtor's case was a Chapter 7 case and the transfer was not made, and Camac received payment of its claim to the extent provided by the provisions of the Bankruptcy Code.

24. In accordance with the foregoing, the transfer is avoidable pursuant to Section 547 of the Bankruptcy Code.

WHEREFORE, the Debtor respectfully requests that the Court enter an order avoiding the transfer, deeming Camac an unsecured non-recourse creditor of the Debtor, and for such other and further relief as the Court deems necessary or appropriate.

## Count II

### (Avoidance of Fraudulent Obligation)

25. The Debtor repeats the allegations in each of the foregoing paragraphs, which are incorporated by reference as if set forth fully herein.

26. Section 544 of the Bankruptcy Code affords to a trustee or debtor-in-possession the power to utilize state law to avoid a fraudulent transfer or incurrence of a fraudulent obligation.

27. Pursuant to Section 15-24 of the Maryland Commercial Law Article, every transfer made or obligation incurred by a person who is or will be rendered insolvent is fraudulent as to creditors without regard to actual intent if the transfer is made or obligation incurred without fair consideration.

28. Fair consideration is given for an obligation if the obligation is received in good faith to secure a present advance or antecedent debt in an amount not disproportionally small as compared to the value of the obligation incurred.  Maryland Commercial Law Article Section 15-203.

29. Under the Litigation Funding Agreement, the Debtor incurred an obligation of $4.2 million in exchange for an advance of $310,829 (which amount is approximately one-third of the amount Camac had agreed to advance).  The $4.2 million obligation is disproportionally large to the small advance received by the Debtor from Camac.

30. The Debtor was insolvent at the time he incurred the obligations or was rendered insolvent by incurring the obligations under the Litigation Funding Agreement.

31. Accordingly, the obligations incurred by the Debtor under the Litigation Funding Agreement are fraudulent and should be avoided and cancelled as a matter of law.

WHEREFORE, the Debtor respectfully requests that the Court enter an order avoiding the debtor's obligations to Camac under the Litigation Funding Agreement and adjudicating such claims to be null and void, and for such other and further relief as the Court deems necessary or appropriate.

## Count III

## (Turnover of Property to Debtor's Estate)

32. The Debtor repeats the allegations in each of the foregoing paragraphs, which are incorporated by reference as if set forth fully herein.

33. Pursuant to the Funding Agreement, Camac paid the required $1 million in funding due to the Debtor into the IOLTA account of the Berman Tabacco law firm. Brian Wood, Esquire, of the Berman Tabacco firm was at the time counsel for the Debtor.[1]

34. The Funding Agreement required Camac to provide the Debtor with $1 million, to be used for (a) $310,829 for "Business/Operations", (b) $542,457 for "IRS Tax", and (c) $146,714 for "State of Maryland tax".

35. Camac disbursed $310,829 to the Debtor but failed and refused to disburse the balance of the $689,171 in the IOLTA account (the "IOLTA Account Funds).

36. The Debtor has a possessory interest in the IOLTA Account Funds.

37. The Debtor has suffered substantial loss and damage because Camac's refusal to authorize the disbursement of the IOLTA Account Funds prevented the Debtor from paying and satisfying the tax obligations for which such funds are earmarked.

38. Pursuant to Section 541 of the Bankruptcy Code, the Debtor's estate includes all property in which the Debtor has an interest, wherever located and by whomever held. The Debtor has a possessory interest in the IOLTA Account Funds due to him under the Funding Agreement.

39. Pursuant to Section 1107 of the Bankruptcy Code, the Debtor, as a debtor-in-possession, has the rights and powers of a trustee.

---

[1] A conflict subsequently arose between the Debtor and attorney Wood. The Debtor ultimately terminated his representation by Wood and retained new counsel.

40. Camac and the Berman Tabacco firm are "custodians" as defined in Section 101(11) of the Bankruptcy Code. Section 543 requires that such custodians deliver to the trustee any property held by them and file an accounting with respect to same.

WHEREFORE, the Debtor respectfully requests that the Court direct Camac and Berman Tabacco to deliver to the Debtor the IOLTA Account Funds, provide an accounting of the IOLTA Account Funds, and for such other and further relief as the Court deems necessary or appropriate.

## Count IV

### (Disallowance of Claim)

41. The Debtor repeats the allegations in each of the foregoing paragraphs, which are incorporated by reference as if set forth fully herein.

42. Notwithstanding its failure to authorize the release of the IOLTA Account Funds to the Debtor, Camac asserts a claim against the Debtor in the amount of $4.2 million.

43. Camac's breach of the Funding Agreement requires the disallowance of Camac's claim in full.

44. Further, Camac funded the Debtor with $310,829 in 2018. It is now seeking repayment of $4.2 million, which would consist of repayment of principal of $310,829 and interest of $3,989,171. This equates to an interest rate of approximately 400%, which is unconscionable by any standard and in violation of applicable usury laws.

45. Camac's breach of the Funding Agreement and the unenforceability of the Funding Agreement require the disallowance of Camac's claims arising under the Funding Agreement.

WHEREFORE, the Debtor respectfully requests that the Court enter an order disallowing Camac's claim against the Debtor, and for such other and further relief as the Court deems necessary or appropriate.

### Count V

### (Setoff)

46. The Debtor repeats the allegations in each of the foregoing paragraphs, which are incorporated by reference as if set forth fully herein.

47. To the extent that Camac has any allowable claim against the Debtor, the Debtor is permitted under Section 553 of the Bankruptcy Code to offset against any such claim the amounts due and owing to the Debtor from Camac.

48. These amounts include the IOLTA Account Funds and loss and damages suffered by the Debtor as a result of Camac's breach of the Funding Agreement, including, but not limited to, the Debtor's inability to pay tax liabilities which were supposed to have been paid with the IOLTA Account Funds.

WHEREFORE, the Debtor respectfully requests that the Court enter an order disallowing Camac's claim against the Debtor or, in the alternative, reducing Camac's claim by all amounts owed by Camac to the Debtor, and for such other and further relief as the Court deems necessary or appropriate.

### Count VI

### (Subordination)

49. The Debtor repeats the allegations in each of the foregoing paragraphs, which are incorporated by reference as if set forth fully herein.

50. Under the Funding Agreement, Camac does not have a recourse claim against the Debtor. Camac's sole source of recovery for any claim allowed to it by this Court is "Litigation Proceeds" from the "Cases".

51. The Debtor's Chapter 11 plan will provide for payments to the Debtor's general unsecured creditors from the Debtor's future earnings and from any recoveries made by the Debtor in respect of any litigation matters or claims.

52. The Debtor asserts that Camac should not have any allowable claim in this case. However, to the extent that the Court allows Camac an unsecured claim, Camac's claim should be subordinated to the payment in full of all other unsecured creditors under principles of equitable subordination. Further, Camac's claim must be limited to only those funds which constitute "Litigation Proceeds" of "Cases".

53. Section 510(c) of the Bankruptcy Code authorizes the Court to subordinate for purposes of distribution all or part of an allowed claim, which is both necessary and appropriate with respect to any claim allowed to Camac herein.

WHEREFORE, the Debtor respectfully requests that the Court enter an order subordinating any claim allowed to Camac to the payment in full of all other general unsecured creditors, and further limiting any payments to Camac to "Litigation Proceeds" from "Cases" received by the Debtor, and for such other and further relief as the Court deems necessary or appropriate.

February 10, 2021                              Respectfully submitted,


                                          */s/ Brent C. Strickland*
                                        Brent C. Strickland (#22704)
                                        Paul M. Nussbaum (#04394)
                                        Whiteford, Taylor & Preston L.L.P.
                                        111 Rockville Pike, Suite 800
                                        Rockville, MD 20850
                                        410-347-9402
                                        bstrickland@wtplaw.com
                                        pnussbaum@wtplaw.com

                                        *Proposed attorneys for Debtor*


                                        */s/ Kimberly P. West*
                                        Kimberly P. West
                                        Simon Cataldo
                                        Ashcroft Law Firm
                                        200 State Street, 7th Floor
                                        Boston, MA 02109
                                        (617) 573-9400
                                        kwest@ashcroftlawfirm.com
                                        scataldo@ashcroftlawfirm.com

                                        *Proposed Special Counsel for Debtor*


*11624733*