IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
<u>(Baltimore Division)</u>

| | | |
|---|---|---|
| IN RE: | * | |
| JOHN MCDONNELL MCPHERSON, | * | Case No.: 21-10205-MMH (Chapter 11) |
| Debtor.  . | * | |
| * * * * * * | * * * * * * * | |
| CAMAC FUND, LP | | |
| | * | |
| Plaintiff, | | |
| | * | |
| v. | | Adv. Proc. No.: |
| | * | |
| JOHN MCDONNELL MCPHERSON, | | |
| | * | |
| Defendant. | | |
| | * | |
| * * * * * * * * * * * * * | | |

**COMPLAINT OBJECTING TO DISCHARGEABILITY OF DEBT**

Plaintiff, Camac Fund, LP ("Plaintiff" or "Camac"), by and through its attorneys, Alan M. Grochal, Richard L. Costella, and pursuant to 11 U.S.C. section 523(a), hereby files this Complaint Objecting to Dischargeability of Debt against Debtor/Defendant John M. McPherson. In support of its Complaint, Camac states as follows:

I. **JURISDICTION AND VENUE.**

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b) and 11 U.S.C. §523.

2. Venue is proper in this Court by virtue of 28 U.S.C. §§ 1408 and 1409.

3. The matter before the Court is a core proceeding under 28 U.S.C. § 157(b)(2).

II. **PARTIES**

4. Plaintiff Camac is a hedge fund located at 350 Park Avenue, 13th Floor, New York,

1

New York 10022.

5.  John M. McPherson (the "Debtor") is the Debtor in this bankruptcy case by virtue of a voluntary petition for relief having been filed under Chapter 11 of the Bankruptcy Code on January 12, 2021.

### III.  FACTUAL BACKGROUND

**A.  Preliminary Statement.**

6.  On January 4, 2018, the Debtor and Camac executed a Litigation Funding Agreement (the "Funding Agreement") in the amount of $1 million (the "Camac Funding"). A true and correct copy of the Funding Agreement is attached hereto as **Exhibit 1.**

7.  The purpose of the Funding Agreement was to provide the Debtor, through a sale of a portion of the Debtor's interest in certain Cases (as defined herein), with the capital necessary to fund his business operations, pursue whistleblower cases, and "extinguish outstanding liabilities"; which liabilities included years and years of unpaid taxes. *See* **Exhibit 1,** p. 1.

8.  As discussed below, the Debtor failed to live up to his obligations under the Funding Agreement by, *inter alia*, concealing funds from the Cases and intentionally removing Mr. Wood (as defined herein) from his position under the Funding Agreement so that the Debtor could conceal from Camac that he had received Litigation Proceeds (as defined herein) from Cases covered by the Funding Agreement.

**B.  The Litigation Funding Agreement.**

9.  The terms of the Funding Agreement state that in exchange for the $1 million from Camac, Camac would purchase a share of the proceeds from various litigation and non-litigation matters (the "Litigation Proceeds") arising from certain whistleblower cases (the "Cases") that the Debtor was involved with at the time, or was later to become involved in.

10. The Funding Agreement provided for the Litigation Proceeds to be distributed first

to Camac, until Camac had received the agreed-upon amount (currently $4.2 million, and that amount increases each calendar year until 2024), and that the Debtor would not adversely affect the priority, perfection, or validity of Camac's security interest in the Litigation Proceeds.

11. A key and material provision of the Funding Agreement was that Bryan Wood, Esq. ("Mr. Wood"), a lawyer at the law firm of Berman Tobacco that was well known by Camac who—at the time the Funding Agreement was executed—was representing the Debtor in whistleblower submissions, including one related to the litigation in the United States District Court for the Western District of Texas captioned *SEC v. Life Partners Holdings, Inc., et al.,* Case No. 12-cv-00033-RP (the "Life Partners Action").[1]

12. Mr. Wood's involvement in the Life Partners Action and other matters was so material to the Funding Agreement that Camac would not have entered into the Funding Agreement without his participation. As such, in the Funding Agreement the parties expressly recognized Mr. Wood's involvement on behalf of the Debtor. *See* **Exhibit 1.**

13. Given the Debtor's longstanding history of blatant nonpayment of taxes, Camac was concerned that it could not solely rely on the Debtor's word. For this reason, Mr. Woods involvement was one of the most critical elements, if not the most critical element, of the Funding Agreement.

14. Pursuant to the Funding Agreement, Mr. Wood would manage the Litigation Proceeds from any Cases covered by the Funding Agreement. Litigation Proceeds are defined in the Funding Agreement as:

---

[1] The Life Partners Action is not the only matter in which the Debtor was or is involved that is covered by the Funding Agreement. Indeed, the Life Partners Action was but one of the "Cases" covered by the Funding Agreement, which defined "Cases" as including the 5 Life Partners Action and "[a]ny and all other submissions, cases, or the like under the SEC, IRS, or CFTC whistleblower program, or under any qui tam statute." **Exhibit A**, at p. 1. Camac had, and continues to have, an interest in the Cases (including the Life Partners Action) under the terms of the Funding Agreement.

3

> [T]he gross total revenues, recoveries, and/or proceeds, whether monetary or non-monetary, obtained from, paid by, or paid on behalf of the Cases. This includes, but is not limited to, all whistleblower payments paid by any government agency, expert witness revenues, all damages, settlement sums, compensation, accounts of profits, restitution, licensing revenues, sums from any development and/or commercialization agreement, costs, fees and expenses received from the Cases, and all similar sums, before deduction of any taxes.

**Exhibit 1**, p. 1.

15. Cases are defined as the Life Partners Action and "[a]ny and all other submissions, cases, or the like under the SEC, IRS, or CFTC whistleblower program, or under any qui tam statute." *Id.*

16. Mr. Wood's role, as specifically delineated in the Funding Agreement, was to update Camac on the status of recoveries, and serve as the escrow agent for the account that held the funding amount.

17. The nature of whistleblower recoveries is such that nearly all of the proceedings are not public record, and without Mr. Wood conveying information to Camac, Camac would have been unable to ascertain whether the Debtor has recovered any Litigation Proceeds.

18. In that respect, under the heading **PROCEDURE,** the Funding Agreement provides:

> Where the Cases are successful giving rise to the receipt by Attorney [Mr. Wood] of Litigation Proceeds, Litigant [Debtor] shall upon receiving notice from Attorney of the receipt of said Litigation Proceeds:
>
> > 1. Notify Funder [Camac] of the amount of Litigation Proceeds received and obtain instructions from Funder as to how to direct Attorney to distribute the funds;
> >
> > 2. Within ten (10) business days of receiving instructions from Funder as to how to how the Litigation Proceeds are to be distributed, instruct Attorney to distribute the Funder's Entitlement pursuant to Funders instructions.

19. Accordingly, the parties specifically contemplated a process by which it shall be

Mr. Wood, the Debtor's attorney, who is to receive the Litigation Proceeds from the Cases covered by the Funding Agreement (including the Life Partners Action) and then give notice of such Litigation Proceeds to the Debtor who is then obligated to notify Camac of the amount of the Litigation Proceeds.

20. Mr. Wood's active role with the procedures underlying the Funding Agreement was further expressly contemplated by the parties in the Funding Agreement. Among the Debtor's obligations and "[i]n recognition of the fact that the Funder [Camac] has an interest in the Litigation Proceeds and an interest in the efficient and effective prosecution of the Cases, the Litigant [Debtor] irrevocably directs the Attorney [Mr. Wood] to promptly respond to any reasonable request by the Funder [Camac] for information related to the Proceeding, subject to applicable attorney client privileges." **Exhibit 1**, p. 3.

21. Unfortunately, Camac's concerns were justified, as the Debtor removed Mr. Wood from the Life Partners Action and discontinued using him as counsel in new cases with the intent of concealing Litigation Proceeds and avoiding his repayment obligations to Camac.

22. More specifically, subsequent to the execution of the Funding Agreement and Camac's receipt of released funding from the funding account, the Debtor terminated Mr. Wood from representing him in the Life Partners Action.

23. Moreover, the Debtor executed an engagement letter with another law firm, Buckley Sandler, dated October 26, 2018, to represent him in the Life Partners Action, including "engag[ing] in a letter writing campaign to defend claims" brought by Mr. Wood seeking a portion of any award the Debtor receives as a whistleblower in the Life Partners Action and, at a discounted rate, representing the Debtor "in litigation with any third party who demands or otherwise claims a portion of any award Respondent [Debtor] receives as a whistleblower in the Life Partners

Action."

24. The Debtor never notified Camac that he was terminating Mr. Wood from representing him in the Life Partners Action or that he had executed the Buckley Sandler engagement letter.

25. Additionally, Camac was informed by a third party that on or around August 2019 the Debtor received profits related to another whistleblower case covered by the Funding Agreement (the "General Electric Matter"), but the Debtor did not inform Camac of the receipt of those Litigation Proceeds and did not distribute any such proceeds to Camac.

26. Finally, the Debtor represented in the Funding Agreement that Camac shall have a first priority security interest in any Litigation Proceeds, but it later came to Camac's attention that there was an outstanding IRS lien in excess of $200,000.00.

**B.    The Arbitration.**

27. The Funding Agreement includes a Dispute Resolution provision, which states that if the parties have a dispute arising from the Funding Agreement, "the [P]arties agree to submit such dispute to binding arbitration administered by the American Arbitration Association in accordance with its Commercial Arbitration Rules …" **Exhibit 1.**

28. Pursuant to the Dispute Resolution clause—and due to the Debtor's actions described above—Camac submitted an arbitration demand to the AAA on September 30, 2020 (the "the Arbitration Demand").

29. Fifteen days later, on October 15, 2020, the Debtor responded to the Arbitration Demand with theDebtor's Challenge to Arbitrability and Answer to Demand for Arbitration (the "Answer").

30. Twelve days after filing the Answer, the Debtor also filed a Counterclaim on

October 27, 2020.

31. A scheduling hearing was set for January 13, 2021 but was stayed by the Debtor's filing of the instant bankruptcy case on January 12, 2021.

## COUNT I
### (Objection to Discharge of Debt Pursuant to 11 U.S.C. § 523(a)(2))

32. The allegations of all of the preceding paragraphs are repeated, realleged, and incorporated as though fully set forth herein.

33. Section 523(a)(2)(A) provides that a discharge under 1141 … of this title does not discharge an individual debtor from any debt:

> 2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—
>
> (A)   false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.

34. Prior to entering into the Funding Agreement, the Debtor represented to Camac that that there were no liens or encumbrances on the Litigation Proceeds.

35. Subsequent to the execution of the Funding Agreement, however, Camac discovered that there was an IRS tax lien in excess of $200,000.00.

36. Had it known there was a superior lien on the Litigation Proceeds, Camac would not have entered into the Funding Agreement with the Debtor.

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in favor of Camac Fund, LP and against the Debtor, as follows:

(A)   On Count I, pursuant to 11 U.S.C. § 523(a)(2)(A); and

(B)   Enter an Order determining that the debt owed to Camac is non-dischargeable; and

(C)   Award Camac attorney's fees and costs; and

(D)   Grant such other and further relief as justice may require.

## COUNT II
### (Objection to Discharge of Debt Pursuant to 11 U.S.C. § 523(a)(6))

37. The allegations of all of the preceding paragraphs are repeated, realleged, and incorporated as though fully set forth herein.

38. 11 U.S.C. §523(a)(6) provides that "a discharge under 1141 … of this title does not discharge an individual debtor from any debt for willful and malicious injury by the debtor to another entity or to the property of another entity."

39. In the context of Section 523(a)(6), "willful" means a deliberate or intentional act.

40. In the context of Section 523(a)(6), "malicious" does not require a showing of malice or subjective ill will to a creditor, but merely requires a showing that the debtor has acted with a knowing disregard for the rights of another.

41. Here, the Debtor caused a willful and malicious injury to Camac because he deliberately concealed Litigation Proceeds from the Cases

42. The Debtor also caused a willful and malicious injury to Camac when he intentionally and deliberately removed Mr. Wood from his position under the Funding Agreement so that the Debtor could further the concealment of Litigation Proceeds from Camac.

43. Finally, the Debtor further caused a willful and malicious injury to Camac when he fraudulently transferred certain Litigation Proceeds to his company, MMS Advisors, his wife, and his daughter.

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in favor of Camac Fund, LP and against the Debtor, as follows:

(A) On Count II, pursuant to 11 U.S.C. § 523(a)(6); and

(B) Enter an Order determining that the debt owed to Camac is non-dischargeable; and

(C) Award Camac attorney's fees and costs; and

(D)     Grant such other and further relief as justice may require.

Dated: April 5, 2021.                                    Respectfully Submitted,


/s/ Richard L. Costella
Alan M. Grochal, Bar No.: 01477
Richard L. Costella, Bar No.: 14095
Tydings & Rosenberg LLP
One E. Pratt Street, Suite 901
Baltimore, Maryland 21202
Phone: (410) 752-9753
Fax: (410) 727-5460
Email: agrochal@tydings.com
           rcostella@tydings.com

*Attorneys for Camac Fund, L.P.*