# **EXHIBIT 1**

## LITIGATION FUNDING AGREEMENT

This Funding Agreement (the "Agreement") is made and entered into as of the 1-4-18 (the "Effective Date") by and between John McPherson, a individual residing in Maryland ("John" or the "Claimant") and Camac Fund, LP, a company existing under the laws of Delaware (the "Funder") (each a "Party").

WHEREAS, the Claimant desires funding for his business and operations, as well as to extinguish outstanding liabilities; and

WHEREAS, the Funder is willing to provide such funding in exchange for a share of Litigation Proceeds (as defined below);

NOW, THEREFORE, in consideration of the promises and of the mutual covenants and promises hereinafter set forth, the parties to this Agreement do hereby agree as follows:

| | |
|---|---|
| Litigant | John McPherson |
| Cases | SEC v. Life Partners Holdings, Inc., Brian D. Pardo, R. Scott Peden and David M. Martin, Case No. 12-cv- 00033 and all affiliated persons/entities (collectively, "Life Partners")<br>Any and all other submissions, cases, or the like under the SEC, IRS, or CFTC whistleblower program, or under any qui tam statute. |
| Funder | Camac Fund, LP |
| Attorney | Bryan Wood, Esq. |
| Litigation Proceeds | "Litigation Proceeds" means the gross total revenues, recoveries and/or proceeds, whether monetary or non-monetary, obtained from, paid by, or paid on behalf of the Cases. This includes, but is not limited to, all whistleblower payments paid by any government agency, expert witness revenues, all damages, settlement sums, compensation, accounts of profits, restitution, licensing revenues, sums from any development and/or commercialization agreement, costs, fees and expenses received from the Cases, and all similar sums, before deduction of any taxes. |
| Committed Capital | Legal Fees: waived<br>Funding Amount: $1,000,000<br><u>Origination Fee: waived</u><br>Total: $1,000,000<br>The total amounts released by Funder under this Agreement shall be referred to as the "Released Funding." |
| Use of Proceeds | Litigant agrees that the Released Funding shall be used solely for the purposes of funding his business and operations, as well as extinguishment of the following liabilities in full. The amount pertaining to the extinguishment of the following liabilities shall be held in Attorney's IOLTA account until verified in writing by the litigant and then will be released from such account |

| | |
|---|---|
| | pursuant to instruction by Funder. Under no circumstances can the Committed Capital be used for any other purpose than is directly outlined below. Any violation of the use of Proceeds shall constitute a breach of the agreement.<br>Business/Operations - $310,829<br>IRS Tax - $542,457<br>State of Maryland Tax – $146,714 |
| Funder's Entitlement | Total aggregate amount due to Funder with respect to the Cases (each such amount, the "Funder's Entitlement") is:<br>$1,370,000 if Funder's Entitlement paid in full during calendar year 2018<br>$2,000,000 if Funder's Entitlement paid in full during calendar year 2019<br>$3,000,000 if Funder's Entitlement paid in full during calendar year 2020<br>$4,200,000 if Funder's Entitlement paid in full during calendar year 2021<br>$5,950,000 if Funder's Entitlement paid in full during calendar year 2022<br>$8,650,000 if Funder's Entitlement paid in full during calendar year 2023 or thereafter |
| Waterfall/Priorities | Funder recognizes that Litigant has entered into a Contingency Fee Agreement (the "Contingency Fee Agreement") with Attorney, wherein Attorney, depending on the case, is entitled to varying percentages of the Litigation Proceeds (for example, 20% of the proceeds from the Life Partners case), plus expenses, that will be attributed pari-passu to the Litigant ("Contingency Fee").<br><br>Litigation Proceeds shall be distributed as follows based on Litigant's remaining interest in the Litigation Proceeds after attorneys' fees and expenses are paid (the "Waterfall"):<br><br>First, until such time as Funder has received its Funder's Entitlement in full, 100% to Funder, 0% to Litigant;<br><br>Second, 100% of the remainder to Litigant. |

PURCHASE AND SALE. Subject to the terms and conditions of this Agreement, Funder agrees to purchase and Litigant agrees to sell a portion of Litigation Proceeds (Funder's Entitlement) in exchange for Funder's obligation to provide the Committed Capital.

INTEREST IN LITIGATION PROCEEDS. Litigant hereby grants Funder a first priority security interest in the Litigation Proceeds and shall take all action necessary to maintain the first priority status of such interest. Litigant shall not adversely effect or permit anything to adversely effect the priority, perfection, or validity of Funder's interest, including without limitation by creating, incurring, assuming or suffering to exist any Lien upon the Litigation Proceeds, except as otherwise provided in this Agreement. Other than the Contingency Fee, Litigant warrants that there is no charge or other encumbrance on the Litigation Proceeds.

PROCEDURE. Where the Cases are successful giving rise to the receipt by Attorney of Litigation Proceeds, Litigant shall upon receiving notice from Attorney of the receipt of said Litigation Proceeds:

1. Notify Funder of the amount of Litigation Proceeds received and obtain instructions from Funder as to how to direct Attorney to distribute the funds;

2. Within ten (10) business days of receiving instructions from Funder as to how the Litigation Proceeds are to be distributed, instruct Attorney to distribute the Funder's Entitlement pursuant to Funder's instructions.

LITIGANT OBLIGATIONS. In recognition of the fact that the Funder has an interest in the Litigation Proceeds and an interest in the efficient and effective prosecution of the cases, the Litigant irrevocably directs the Attorney to promptly respond to any reasonable request by the Funder for information related to the Proceeding, subject to applicable attorney client privileges. Notwithstanding the above, the Funder accepts that the Attorney's professional duties are owed to the Litigant and not the Funder.

BUY DOWN OF FUNDER'S ENTITLEMENT. Litigant shall have the right at any time prior to satisfying the full amount owed under the Funder's Entitlement at one time to buy down 25% or 50% of the Funder's Entitlement. In the event Litigant chooses to exercise his rights under this clause, Litigant shall pay Funder 25% or 50% of the Funder's Entitlement for that calendar year. For that and all subsequent calendar years, the Funder's Entitlement shall be reduced by the percentage of the Funder's Entitlement that Litigant paid down. For example, if Litigant buys down the Funder's Entitlement by 50% in calendar year 2019 and receives additional Litigation Proceeds in calendar year 2020, the total amount that Litigant is obligated to pay Funder shall be $2,500,000 instead of $3,000,000 ($2,000,000*50%) (50% buy down of 2019 Funder's Entitlement) + (3,000,000*50%) (2020 Funder's Entitlement reduced by 50%) = $2,500,000).

REPRESENTATONS. Litigant is not a party to any action, suit, proceeding or investigation, and there is no action, suit, proceeding or investigation pending or threatened against Litigant. There are no outstanding or unpaid judgments against Litigant.

LIMITED LIABILITY. Litigant agrees that there shall be no liability of the Funder under this Agreement, or related to its activities in connection with this Agreement, except for gross negligence, willful misconduct, fraud or reckless activity amounting to fraud. This limitation on liability is absolute and excludes liability, by way of illustration and not limitation, for negligence, and for any damages that may constitute compensatory damages, lost profit, or punitive damages. This limitation on liability extends to the Funder and its representatives, affiliates, agents, officers, directors and employees and their successors and assigns.

CONFIDENTIALITY. Information provided to Funder pursuant to this Agreement is subject to privilege and in order to maintain privilege, Funder shall strictly maintain the confidentiality of such information. The Litigant shall strictly maintain the confidentiality of all information or documents provided to him by Funder, as well as maintain the confidentiality of the Funder's identity at all times. The Parties will keep the contents of this Agreement confidential except where disclosure is required by law.

GOOD FAITH DEALINGS. The Parties will act in good faith toward each other and be just and faithful in their dealings with each other in all matters arising out of or connected with this Agreement and

not do or permit to be done anything likely to deprive any Party of the benefit for which the party entered into this Agreement. If this Agreement or any part thereof is annulled, avoided, or held unenforceable, the Litigant will forthwith do all things necessary, including, without limitation, executing any further or other agreement or instrument, to ensure that the Funder received any remuneration, entitlement or other benefit to which this Agreement refers or is contemplated by this Agreement. The Litigant will not seek any order form any curt that may detrimentally affect the Funder's rights under this Agreement other than with the consent of the Funder.

ASSIGNMENT. Litigant may not assign this Agreement without the prior written consent of the Funder. Funder may sell, assign or transfer one or more interests or participations in all or any part of its rights or obligations under this Agreement in each case without the consent of the Litigant.

GOVERNING LAW. This Agreement, and any and all claims or causes of action (whether in contract or tort) based upon, arising out of or relating to this Agreement and to the transactions contemplated by this Agreement or the negotiation, execution and enforcement of this Agreement, shall be governed by and construed and enforced in accordance with the internal Laws of the State of Delaware without reference to its choice of law rules.

DISPUTE RESOLUTION. If a dispute arises under this Agreement which the parties cannot resolve within 15 business days, the dispute may be referred by any party to a mutually acceptable and neutral mediator who will be jointly instructed and who will conduct a mediation between the Parties. If the parties fail to agree upon a neutral mediator within 30 business days after a Party notifies the other of the need for mediation, or if the Parties fail in mediation to resolve the dispute, the parties agree to submit such dispute to binding arbitration administered by the American Arbitration Association in accordance with its Commercial Arbitration Rules (including the Optional Rules for Emergency Measures of Protection), and judgment on the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof.

NOTICE. All notices, demands and other communications given or delivered under this Agreement shall be in writing and shall be deemed to have been given when personally delivered, mailed by first class mail, return receipt requested, or delivered by express courier service or e-mail. Notices shall, unless another address is specified in writing, shall be sent to the appropriate Party's address or e-mail indicated below:

If to Litigant:
John McPherson
1414 Key Highway Suite J
Baltimore, MD 21230

If to Funder:
Eric Shahinian
Camac Fund, LP
105 W. 29th Street, 33L
New York, NY 10001

GENERAL. The written terms of this Agreement constitute the entire agreement of the Parties. There shall be no variation or amendment to the terms of this Agreement except in writing signed by each Party. If any provision of this Agreement, or the application thereof to any person or circumstances, is or becomes invalid or unenforceable, the remaining provisions shall not be affected and each provision shall be valid and enforceable to the full extent permitted by law. This Agreement may be executed in any number of counterparts, each of which shall be deemed an original, and all of which together shall constitute one and the same instrument. Any signature transmitted by facsimile or other electronic transmission shall have the full force and effect of an original signature.

_____
Litigant: John McPherson
By: John McPherson

_____
Funder: Camac Fund, LP
By: Eric Shahinian, Managing Member of the GP