**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
(Baltimore Division)**

| | |
|---|---|
| **IN RE:** | * |
| **JOHN MCDONNELL MCPHERSON,** | *   Case No.: 21-10205-MMH |
| | (Chapter 11) |
| Debtor. | * |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**OBJECTION OF CAMAC FUND, L.P. TO DEBTOR'S DISCLOSURE STATEMENT
PURSUANT TO SECTION 1125 OF THE BANKRUPTCY CODE**

Camac Fund, L.P. ("Camac"), a creditor and party in interest, by and through its undersigned counsel, Alan M. Grochal, Richard L. Costella, and Tydings & Rosenberg LLP, objects to Debtor's Disclosure Statement Pursuant to Section 1125 of the Bankruptcy Code (the "Disclosure Statement"), and in support thereof, states as follows:

**BACKGROUND**

1. On January 12, 2021, John McDonnell McPherson ("McPherson" or the "Debtor") filed a voluntary petition under Chapter 11 of the Bankruptcy Code (the "Petition Date"), and thereafter has been managing his business as a debtor-in-possession.

2. On February 10, 2021, McPherson, after being informed that Camac intended to file a motion seeking relief from the automatic stay to allow an arbitration proceeding between the parties to move forward, filed an Adversary Complaint against Camac which has been designated as Adversary No. 21-00035 (the "Turnover Action").

3. On February 19, 2021, Camac filed a Motion seeking relief from the automatic stay (dkt. 36)(the "Lift Stay Motion").

4. On March 25, 2021, Camac filed a Motion to Abstain from hearing Adversary No. 21-00035 (the "Abstention Motion").

1

5.     On April 5, 2021, Camac filed a Complaint Objecting to Dischargeability of Debt which has been designed as Adversary No. 21-00078 (the "Discharge Action").

## ARGUMENT

### Standards for Approving a Disclosure Statement

Section 1125 of the Bankruptcy Code requires that a debtor provide sufficient information in the disclosure statement "that would enable a hypothetical reasonable investor typical of holders of claims or interests of the relevant class to make an informed judgment about the plan . . . ." 11 U.S.C. § 1125.  The case law interpreting § 1125 has identified the types of information that should be addressed by a disclosure statement.  Such information includes (but is not limited to) the following:

       1.     The circumstances that gave rise to the filing of the petition.

       2.     A complete description of the available assets and their value.

       3.     The source of information provided in the disclosure statement.

       4.     The condition and performance of the debtor while in Chapter 11.

       5.     Information regarding claims against the estate.

       6.     A liquidation analysis setting forth the estimated return that creditors would receive under Chapter 7.

       7.     A summary of the plan of reorganization.

       8.     An estimate of all administrative expenses, including attorneys' fees and accountants' fees.

       9.     The collectability of any accounts receivable.

       10.    Any financial information, valuations, or pro forma projections that would be relevant to creditors' determination of whether to accept or reject the plan.

       11.    Information relevant to the risks being taken by the creditors and interest holders.

      12.     The actual or projected value that can be obtained from avoidable transfers.

      13.     The tax consequences of the plan.

*In re Sciota Valley Mortgage Co.*, 88 B.R. 168, 171 (Bankr. S.D. Ohio 1988) (citations omitted). The Debtor's Disclosure Statement fails to adequately address several of the required categories of information and therefore cannot be approved.

    **I.**    **The Disclosure Statement Must Provide More Detail Regarding Available Assets and Their Value**

The Disclosure Statement goes to great lengths to discuss the Debtor's major accomplishments in pursuing whistleblower claims. Notwithstanding the Debtor's success in the Life Partners case and, to a lesser extent, in the AmTrust case, it does not appear that there are any other potential cases to fund the Plan (despite the fact that pursuing whistleblower cases is the Debtor's primary business). Since property of the estate is broadly defined in section 541 of the Bankruptcy, pursuing leads that could later develop into cases constitute assets that ought to be discussed. What is not abundantly clear from the Disclosure Statement is whether the Debtor has ceased pursuing whistleblower claims or whether the claims that he is pursuing are too speculative to assign any value. In either scenario, more information is needed.

While Camac appreciates the fact that awards in whistleblower cases are difficult to predict, the Debtor, in his financial projections, shows a range of between $15,035 and $7,343,325 from the Life Partners case. At a minimum, the Debtor needs to disclose the basis for these two widely disparate but precise figures. The low estimate would be a disaster for creditors whereas the high estimate would likely mean that the Debtor is solvent. More detailed information regarding the likely amount of the Life Partners award and the basis for this figure is imperative

for creditors to be able to determine what, if anything, they are likely to receive from the Debtor's plan.

## II. The Disclosure Statement Must Provide Information Regarding Claims That Is Consistent with the Proofs of Claim on File

In the Disclosure Statement, the Debtor represents that he anticipates receiving an award of $550,000 in the AmTrust case. Disclosure Statement, page 7. However, in discussing the treatment of priority tax claims and how the AmTrust money will be spent, the Debtor projects that $212,014 of this award will be available for priority tax creditors **after** payment of the secured claim of IRS and after payment of administrative creditors. Disclosure Statement, page 15. The Debtor's projection is inconsistent with the proofs of claim on file. IRS has filed a priority claim in the amount of $579,685.22, but has not asserted that its claim is secured. *See* Amended Claim 1. Similarly, the Maryland Comptroller of the Treasury asserts a priority claim in the amount of $45,124 but does not assert a secured claim.

On the other hand, Camac has asserted a secured claim in the amount of $4,200,000.[1] The Debtor must provide a claim analysis that is consistent with the proofs of claim on file. Moreover, to the extent that the Debtor intends to object to certain claims, it should indicate that it intends to do so and provide a basis for concluding why a particular claim will be disallowed. Filed proofs of claims to which no objections have been filed are presumptively valid and the Debtor cannot unilaterally declare a secured claim to be unsecured without some discussion and analysis.

## III. The Disclosure Statement Needs to Refine the Projections

As discussed previously, the Debtor's projection regarding the amount of the Life Partners award has a range of between $15,035 and $7,343,325. Unfortunately, this is not the sole variable

---

[1] While Camac is aware that the Debtor, in Adversary No. 21-00035, has a count to set aside Camac's lien as preferential, if the upper end of the Debtor's financial projections turn out to be accurate, the Debtor will be solvent and there will be no basis to set aside Camac's lien.

in trying to ascertain the return for creditors. The projected revenues from the sale of forensic accounting research has a range of between $250,000 and $750,00. Even the Debtor's estimate of monthly disposable income is highly suspect. Although the Debtor projects $1380 in disposable income throughout the life of the Plan, based upon the April monthly operating report filed in this case (dkt. 59) even that figure seems questionable since the Debtor disbursed more money than he took in. The bottom line is that the Debtor's projections raise more questions than they answer. The Debtor does not have an operating business in the traditional sense, however, the wide range of potential outcomes from both the Life Partners award and from the sale of research, make trying to figure out the return for creditors from the Disclosure Statement almost futile.

### IV.    The Disclosure Statement Provides No Discussion of Risk Factors

Despite the fact that there are numerous pending litigation matters between the Debtor and Camac, the Disclosure Statement provides no discussion whatsoever regarding risk factors. Pending before the Court are: (1) the Lift Stay Motion and the Debtor's opposition; (2) the Turnover Action and the Abstention Motion; (3) the Discharge Action; and (4) Camac's proof of claim asserting a secured claim in the amount of $4.2 Million. The projections accompanying the Disclosure Statement include a best-case scenario whereby not only is Camac's claim disallowed, but the Debtor is able to recover nearly $700,000 that is currently sitting in an escrow account. While the Debtor is entitled to its dream, creditors are entitled to an objective discussion of the risk factors in the event that the dispute between Camac and the Debtor goes to binding arbitration, in the event that the Turnover Action is stayed, and in the event that Camac's secured claim is allowed in the full amount of $4.2 Million. The Debtor can minimize the likelihood of any of these events occurring, but he is required to apprise creditors of the possibility, which he has failed to do.

## V.  The Debtor's Plan is Not Confirmable

The Disclosure Statement should not be approved because the Plan is patently unconfirmable. Approval of a disclosure statement is not justified when the solicitation of votes and seeking of confirmation of a plan would be a fruitless and costly endeavor. See *In re Harenberg,* 491 B.R. 717 (Bankr. D.Md. 2013) ("A disclosure statement that describes a plan that cannot be confirmed—one that is incapable of satisfying Section 1129(a)—cannot be approved.") (citations omitted); *In re Crimi Mae, Inc.,* 251 B.R. 796,799 (Bankr. D. Md. 2000) ("It is now well accepted that a court may disapprove of a disclosure statement, even if it provides adequate information about a proposed plan, if the plan could not possibly be confirmed.") (citations omitted); *In re Pecht,* 53 B.R. 768 (Bankr. E.D. Va. 1985) ("[A] clear showing in a proffered disclosure statement that the plan could not be confirmed justifies a court in denying approval….").  Courts have held that plans premised on a future sale of real estate are not confirmable where they fail to provide specific details regarding the sale. *In re Walker,* 165 B.R. 994 (Bankr. E.D. Va. 1994).  Similarly, the Plan in the instant case is premised on a highly speculative award from the Life Partners case and a highly speculative recovery from the sales of forensic research. A roll the dice plan is a non-plan that can never satisfy the feasibility requirement for confirmation.

#3807281v.1

## CONCLUSION

For all of the foregoing reasons, Camac respectfully requests that this Court deny approval of the Disclosure Statement and require the Debtor to submit an Amended Disclosure Statement that provides additional information in the areas enumerated above.

Dated: May 27, 2021.  Respectfully Submitted,

/s/ Alan M. Grochal
Alan M. Grochal, Bar No.: 01477
Richard L. Costella, Bar No.: 14095
Tydings & Rosenberg LLP
One E. Pratt Street, Suite 901
Baltimore, Maryland 21202
Phone: (410) 752-9753
Fax: (410) 727-5460
Email: agrochal@tydings.com
       rcostella@tydings.com

*Attorneys for Camac Fund, L.P.*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 27th day of May, 2021, copies of the ***OBJECTION OF CAMAC FUND, L.P. TO DEBTOR'S DISCLOSURE STATEMENT*** were served via the Court's ECF filing system, and where indicated, by the U.S. Mail, postage prepaid, on the following:

Brent C. Strickland, Esq.
Paul M. Nussbaum, Esq.
Whiteford Taylor & Preston, LLP
111 Rockville Pike, Suite 800
Rockville, Maryland 20850
bstrickland@wtplaw.com
pnussbaum@wtplaw.com

James Daniel Ford, Jr. (UST)
Office of the U.S. Trustee
101 West Lombard Street, Suite 2625
Baltimore, Maryland 21201
j.dan.ford@usdoj.gov

/s/ Alan M. Grochal
Alan M. Grochal, Esquire

#3807281v.1