# EXHIBIT 1

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF MARYLAND**
**(Baltimore)**

| | | |
|---|---|---|
| In re: | ) | **Chapter 11** |
| | ) | |
| **JOHN M. MCPHERSON** | ) | **Case No.  21-10205** |
| | ) | |
| | ) | |
| **Debtor.** | ) | |
| | ) | |

## AMENDED CHAPTER 11 PLAN OF REORGANIZATION

John M. McPherson, the above-captioned debtor and debtor in possession (the "Debtor"), hereby proposes and presents this Amended Chapter 11 Plan of Reorganization (the "Plan"), pursuant to the provisions of Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101, *et seq.*

## INTRODUCTION

The Plan provides for the financial reorganization of the Debtor and treatment of his liabilities.  Reference is made to the Debtor's Disclosure Statement Pursuant to Section 1125 of the Bankruptcy Code (the "Disclosure Statement") for a discussion of the facts underlying the Debtor's Chapter 11 bankruptcy case, a description of the Debtor's assets and liabilities, and a summary and analysis of the Plan.  All Creditors[1] entitled to vote on the Plan should review the Disclosure Statement before voting to accept or reject the Plan.  No solicitation materials, other than the Disclosure Statement, have been authorized by the Bankruptcy Court for use in soliciting acceptances or rejections of the Plan.

---

[1] All capitalized terms have the meaning set forth in Article I of this Plan.

## ARTICLE I
## DEFINITIONS

For purposes of this Plan, unless the context otherwise requires, the following terms shall have the respective meanings hereinafter set forth:

1.1      "*Administrative Claim*" shall mean any Claim arising or accruing on or after the Petition Date, which is entitled to priority status pursuant to §§ 503(b) and 507(a)(2) of the Bankruptcy Code.  Administrative Claim includes Claims of Professional Persons employed by the Debtor, to the extent approved and allowed by the Bankruptcy Court.

1.2      "*Allowed*" shall mean (a) the amount of a Claim for which a proof of Claim has been timely filed with the Bankruptcy Court, to which no timely objection has been interposed; (b) if no proof of Claim is timely filed, the amount of any Claim listed in the Schedules, including any amendments thereto, which is not listed as disputed, contingent or unliquidated as to amount; (c) if a timely objection to the allowance of any Claim has been filed, the amount of such Claim allowed by Final Order of the Bankruptcy Court, or (d) any Claim which has been estimated pursuant to § 502(c) of the Bankruptcy Code by Final Order.

1.3      "*Allowed Secured Claim*" shall mean that portion of an Allowed Claim, which is secured under § 506(a)(1) of the Bankruptcy Code by a properly perfected, non-avoidable lien or security interest in property of the Estate.

1.4      "*Bankruptcy Case*" shall mean the Debtor's Chapter 11 bankruptcy case, Case No . 21-10205-MMH.

1.5      "*Bankruptcy Code*" shall mean the Bankruptcy Reform Act of 1978, as amended from time to time, and codified at 11 U.S.C. §§ 101 *et seq*.

1.6      "*Bankruptcy Court*" shall mean the United States Bankruptcy Court for the District of Maryland.

2

1.7 *"Causes of Action"* shall mean any and all actions, causes of action, suits, damages, judgments, Claims, and demands whatsoever of the Debtor or the Estate, including but not limited to actions commenced or actions that may be commenced before or after the Effective Date under the Bankruptcy Code or applicable non-bankruptcy law.

1.8 *"Claim or Claims"* shall mean: (a) a right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or (b) a right to an equitable remedy for breach of a performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

1.9 *"Class"* shall mean a group of Claims which are substantially similar to each other, as classified under the Plan.

1.10 *"Collateral"* shall mean any property or interest in property of the Estate subject to a lien, charge or other encumbrance to secure the payment or performance of a Claim, which lien, charge or other encumbrance is not subject to avoidance under the Bankruptcy Code.

1.11 *"Confirmation Date"* shall mean the date the Bankruptcy Court enters the Confirmation Order.

1.12 *"Confirmation Order"* shall mean the Order of the Bankruptcy Court confirming the Plan pursuant to § 1129 of the Bankruptcy Code.

1.13 *"Creditor"* shall mean any entity which holds a valid Claim against the Debtor.

1.14 *"Disallowed Amount"* shall mean, with respect to a Disputed Claim, that amount which is equal to the difference, if any, between the Face Amount of such Disputed

3

Claim and the amount Allowed by Final Order or agreement with the Debtor or estimated by Final Order pursuant to § 502(c) of the Bankruptcy Code.

1.15    "*Disputed Claim*" shall mean any Claim which is not an Allowed Claim and with respect to which (i) an objection has been interposed and has not been resolved by agreement or Final Order, (ii) the Debtor has scheduled as disputed, contingent or unliquidated, or (iii) the Claim is set forth in an improper or untimely proof of Claim.

1.16    "*Effective Date*" shall mean the date which is thirty (30) days after the Confirmation Order approving the Plan becomes a Final Order.

1.17    "*Entity*" shall mean a person, estate, trust, business, governmental unit and the Office of the U.S. Trustee.

1.18    "*Estate*" shall mean the assets of the Debtor as defined under § 541 of the Bankruptcy Code.

1.19    "*Face Amount*" shall mean, with respect to a particular Claim, (a) if the holder of such Claim has not filed a proof of Claim with the Bankruptcy Court prior to the applicable bar date, the amount of such Claim if it is listed in the Schedules or any amendments thereto as not disputed, not contingent or unliquidated, or (b) if the holder of such Claim has filed a proof of Claim with the Bankruptcy Court prior to the applicable bar date, the amount stated in such proof of Claim.

1.20    "*Final Order*" shall mean an order entered by the Bankruptcy Court which is final in all respects and is not subject to an appeal or stay of execution.

1.21    "*Impaired*" shall mean any Claim that is impaired within the meaning of § 1124 of the Bankruptcy Code.

1.22    "*IRS*" shall mean the Internal Revenue Service.

4

1.23   *"Petition Date"* shall mean January 12, 2021.

1.24   *"Priority Claim"* shall mean any Claims entitled to priority under § 507(a) of the Bankruptcy Code, other than Priority Tax Claims.

1.25   *"Priority Tax Claim"* shall mean any Claim of a taxing authority entitled to priority under § 507(a)(8) of the Bankruptcy Code.

1.26   *"Professional Persons"* shall mean persons retained or to be compensated pursuant to §§ 327, 328, 330, 331 and 503(b) of the Bankruptcy Code or under this Plan.

1.27   *"Pro Rata"* shall mean the proportion that the amount of an Allowed Claim in a particular Class or Classes bears to the aggregate amount of all Allowed Claims or Interests in such Class or Classes.

1.28   *"Schedules"* shall mean the schedules of assets and liabilities, and any amendments thereto, filed by the Debtor with the Bankruptcy Court pursuant to §§ 521(a)(1) and 1106(a)(2) of the Bankruptcy Code.

1.29   *"Secured Claim"* shall mean a pre-petition Claim against the Debtor that is secured under § 506(a)(1) of the Bankruptcy Code by a properly perfected, non-avoidable lien or security interest in property of the Estate.

1.30   *"Unsecured Claim"* shall mean a pre-petition Claim against the Debtor that is not a Secured Claim, an Administrative Claim, a Priority Claim, or a Priority Tax Claim.

1.31   *"U.S. Trustee"* shall mean the United States Trustee for the District of Maryland.

## ARTICLE II
## PROVISION FOR PAYMENT OF ADMINISTRATIVE CLAIMS

2.1    The holders of Allowed Administrative Claims will receive cash equal to 100% of the unpaid portion of such Allowed Administrative Claim on the later of (a) the Effective Date, (b) the date that such Claim becomes an Allowed Administrative Claim, or (c) such other date as such entity may agree to with the Debtor. Any request for the allowance and payment of an Administrative Claim shall be filed with the Court no later than thirty (30) days after the Confirmation Date. The Debtor will continue to pay all fees due to the Office of the U.S. Trustee as and when due. The Debtor believes that the only Administrative Claims will be professional fees, which will be paid from (a) retainers held by the professionals and (b) monthly disposable income ("MDI"), Research Sale Proceeds, and/or the proceeds of the AmTrust Award and Life Partners Award (after the payment of any secured claim of Camac should the Bankruptcy Court determine that Camac's asserted security interest is not avoidable).

## ARTICLE III
## PROVISION FOR PAYMENT OF PRIORITY TAX CLAIMS

3.1    The holders of all Allowed Priority Tax Claims will receive cash payments equal to 100% of the unpaid portion of such Allowed Priority Tax Claim over the term of the Plan. The source of funding for these payments shall be as follows: the AmTrust Award remaining after payment of Administrative Claims shall be paid to the holders of Allowed Priority Tax Claims, unless Camac is allowed a secured claim in the AmTrust Award (in which case Camac would receive the proceeds of the AmTrust Award). The remaining unpaid balance of the Priority Tax Claims will be satisfied by quarterly payments from MDI, Research Sale Proceeds, and any recoveries by the Debtor from the Life Partners Award (after the payment of any allowed secured claim of Camac in the Life Partners Award).

6

## ARTICLE IV
## PROVISION FOR PAYMENT OF PRIORITY NON-TAX CLAIMS

4.1     The Debtor is not currently aware of any Priority Non-Tax Claims. However, in the event that any such claims exist, the holders of Allowed Priority Non-Tax Claims will receive (a) payments consistent with § 1129(a)(9) of the Bankruptcy Code, or (b) such other treatment as the holder of an Allowed Priority Claim may agree to with the Debtor.

## ARTICLE V
## DESIGNATION OF CLASSES OF CLAIMS

For purposes of the Plan, Claims are classified as follows:

5.1     "Class 1 Claim" shall consist of the Allowed Secured Claim of Santander Bank d/b/a Chrsyler Capital ("Santander Bank").    Santander holds a lien on a 2016 Jeep Cherokee owned by the Debtor.

5.2     "Class 2 Claim" shall consist of Allowed General Unsecured Claims.

5.3     "Class 3 Claim" shall consist of the Claim of Camac Fund LP ("Camac"), if any.

## ARTICLE VI
## TREATMENT OF CLASSES IMPAIRED UNDER THE PLAN

Claims shall receive the following treatment under the Plan:

6.1     Class 1 Allowed Secured Claim (Santander Bank)


(a)     Impairment:    Santander Bank is impaired under the Plan.  By the Plan, the Debtor will de-accelerate the auto loan to Sandtander Bank and make the monthly payments required under the applicable loan documents.

7

(b)    Treatment:    In full and complete satisfaction, discharge and release of its Allowed Secured Claim, Santander Bank shall receive one hundred percent (100%) of its Allowed Secured Claim with applicable non-default rate interest in accordance with the terms and provisions of the loan documents in effect between the Debtor and Santander Bank.

(c)    Retention of Liens:    Sandtander Bank shall continue to retain any lien on its Collateral securing said Claim on the Petition Date until the payment in full of its Allowed Secured Claim.

6.2    Class 2 General Unsecured Claims

(a)    Impairment:    Class 2 Claims are impaired by the Plan.

(b)    Treatment:    In full and complete satisfaction, discharge, and release of the Class 2 Allowed General Unsecured Claims, the holders of the Allowed Class 2 Unsecured Claims shall receive their pro rata share of all funds remaining after the payment in full of Administrative Claims, Priority Tax Claims, Priority Non-Tax Claims (if any), the Class 1 Claim, and the payment of any secured claim which may be allowed to Camac.

6.3    Class 3 Claim of Camac.

(a)    Impairment:    Camac is impaired by the Plan.

(b)    Treatment:    Camac filed a proof of claim in the amount of $4.2 million secured by "Litigation Proceeds".  The Debtor disputes Camac's status as a secured creditor because the Debtor contends that the perfection of Camac's purported lien is avoidable under Section 547 of the Bankruptcy Code.  The Debtor also disputes that Camac should have any Claim against the Debtor.  Camac's treatment under the Plan is dependent on the outcome of litigation claims between the Debtor and Camac.  In an

8

effort to provide as much information to creditors as possible, the Debtor believes that the following potential outcomes of the Camac litigation are the most likely scenarios:

(i)    Camac is not allowed any unsecured or secured claim.  In this scenario, Camac would not receive any distribution under the plan and its claims against the Debtor will be discharged.

(ii)    Camac is allowed an unsecured claim.  In this scenario, Camac would receive payment of its allowed unsecured claim, but only to the extent of its pro rata share of the proceeds of the Life Partners Award shared with Class 3 General Unsecured Creditors.

(iii)    Camac is allowed a secured claim.  In this scenario, Camac would receive payment in full of its secured claim to the extent of its collateral as determined by the Bankruptcy Court.

(iv)    The $689,000 in escrow is ordered to be distributed to the Debtor's estate.  If this occurs, these funds shall be utilized by the Debtor to fund the payments to creditors required under the Plan in the order of priority set forth in the Plan.

(v)    The Debtor and Camac resolve all litigation and disputes between them and reach an agreement for Camac to have an allowed claim and receive distributions pursuant to the Plan.

**ARTICLE VII**
**MEANS FOR IMPLEMENTATION AND EXECUTION OF PLAN**

7.1    Implementation and Execution of Plan.

(a)    *Sources of Funds Under Plan.*  The Debtor shall fund the payments required to be made to Creditors under the Plan from the following sources:

(1) any funds on hand as of the Effective Date;

9

(2) all of the Debtor's projected disposable income to be received during the five-year period beginning on the date that the first payment is due under the plan ($1,380 per month);

(3) the proceeds from Causes of Action;

(4) the proceeds of the AmTrust Award and the Life Partners Award as described in the Disclosure Statement; and

(5) the Debtor's share of proceeds to be received by MMS from the sale of research over the term of the Plan, as described in the Disclosure Statement.

A summary of the projected plan funding is set forth on **Exhibit 2** to the Disclosure Statement.

(b)    *Method of Distributions.*  Distributions to be made under this Plan may be made at the option of the Debtor by check drawn on a domestic bank or by wire transfer. The Debtor shall act as the disbursing agent for the purpose of making the distributions provided under the Plan.

(c)    *Delivery of Distributions and Undeliverable Distributions.* Distributions to holders of Allowed Claims shall be made at the address of each such holder as set forth on the Schedules filed with the Bankruptcy Court unless superseded by the address as set forth on the proof of Claim filed by such holders or other subsequent writing notifying the Debtor of a change of address.  If any holder's distribution is returned as undeliverable, no further distributions to such holder shall be made unless and until the Debtor is notified of such holder's then current address, at which time all missed distributions shall be made to such holder, without interest.  All unclaimed distributions which exist as of the date of the final distribution under the Plan will be deemed abandoned and shall be used to satisfy the costs of administering

10

and fully consummating this Plan and the holder of any such Claim shall not be entitled to any other or further distribution under this Plan on account of such Claim.

(d)     *Time Bar to Cash Payments*.   Checks issued by the Debtor in respect of Allowed Claims shall be null and void if not negotiated within forty-five (45) days after the date of issuance thereof.  Requests for re-issuance of any check shall be made in writing to the Debtor by the holder of the Allowed Claim to whom such check originally was issued. Any and all such requests for re-issuance must be received by the Debtor prior to the date of the final distribution under the Plan; any requests not made timely will be treated as unclaimed distributions in accordance with Article 7.1(c).

(e)     *Setoffs*.    The Debtor may, in accordance with §553 of the Bankruptcy Code and applicable non-bankruptcy law, setoff against any Allowed Claim or the distributions to be made pursuant to this Plan on account of such Allowed Claim (before any distribution is made on account of such Allowed Claim) the Claims, rights and causes of action of any nature that the Debtor may possess against the holder of such Allowed Claim; provided, however, that neither the failure to effect such a setoff nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtor or the Estate of any such Claims, rights and causes of action that they may possess against such holder; and provided further, however, that any Claims of the Debtor arising before the Petition Date shall first be setoff against Claims against the Debtor arising before the Petition Date.  To the extent that the Debtor exercises any setoff against any Allowed Claim or the distributions to be made pursuant to this Plan, the Debtor shall provide written notice of such setoff to the holder of the Claim and shall file such notice with the Bankruptcy Court. The holder of such Claim shall have thirty (30) days to object or otherwise respond to the amount of setoff by filing a written response with the Bankruptcy

11

Court.  To the extent that the Debtor and holder of such Claim cannot resolve their dispute, the holder of the Claim shall schedule a hearing with the Bankruptcy Court to address the dispute.  If the holder of such Claim fails to object or respond within thirty (30) days, the setoff shall be effective.

      7.2    Preservation of Causes of Action.  Unless any Causes of Action held by the Debtor are expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or by a Final Order, in accordance with Section 1123(b) of the Bankruptcy Code, the Debtor shall retain and may enforce all rights to commence and pursue any and all Causes of Action, whether arising before or after the Petition Date, and the Reorganized Debtors' rights to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date. No Entity may rely on the absence of a specific reference in the Plan or the Disclosure Statement to any Cause of Action against them as any indication that the Debtor will not pursue any and all available Causes of Action against them. The Debtor expressly reserves all rights to prosecute any and all Causes of Action against any Entity for later adjudication and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise) or laches, shall apply to such Causes of Action upon, after, or as a consequence of the Confirmation or Consummation.  Subject to an ongoing assessment of potentials Causes of Action, as of the date of filing of this Disclosure Statement, the only Causes of Action that the Debtor believes exist which have not yet been the subject of a filed action are potential claims against Bryan Wood and Berman Tabacco.  Prior to the Petition Date, the Debtor made tuition payments for his daughter.  Prior to and after the Petition Date, the Debtor made support

payments to his spouse in connection with the contemplated divorce proceeding. The Debtor does not believe that any of these payments are avoidable and would be viable causes of action.

   7.3  Rights Upon Confirmation. The Debtor, upon confirmation of the Plan, shall have the following non-exhaustive list of rights, standing, duties and obligations necessary to implement the Plan, including:

      (a)  to review the Debtor's schedules and proofs of Claim filed in this case and to object to the Claims;

      (b)  to prosecute, settle, or otherwise resolve any and all Causes of Action; and

      (d)  to distribute funds to holders of Allowed Claims consistent with the terms of the Plan.

   7.4  Upon the Confirmation Date, all of the assets of the Estate shall revest in the Debtor, subject to the Debtor's obligations under this Plan.

   7.5  Upon the Confirmation Date, the Debtor shall be designated pursuant to § 1142(b) of the Bankruptcy Code to execute or deliver any instrument required to effect a transfer of any property dealt with by the Plan and to perform any act that is necessary for the consummation of the Plan.

   7.6  Any sale of property of the Debtor under this Plan shall be free and clear of all liens, Claims and encumbrances, if any, with such liens, Claims and encumbrances to attach to the proceeds of the sale. Under this Plan, all sales of property of the Estate shall be exempt from any stamp tax, transfer tax, recordation tax, or similar tax, pursuant to § 1146(c) of the Bankruptcy Code.

7.7     The Debtor's right and discretion to sell the property of the Debtor is pursuant to §§ 363 (f), (g), and (h) of the Bankruptcy Code, and subject to a secured creditor's right pursuant to § 363(k) of the Bankruptcy Code to bid on such property.  Under the Plan, the Debtor may commence any action, adversary proceeding or contested matter before the Bankruptcy Court to effectuate a sale or otherwise dispose of or collect any or all of the assets of the Debtor under the Plan pursuant to §§ 363(f), (g) and (h) of the Bankruptcy Code.

## ARTICLE VIII
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

8.1     Treatment.  On the Effective Date, all executory contracts and unexpired leases to which the Debtor is a party shall be deemed assumed as of the Effective Date, except for an executory contract or unexpired lease that (i) rejected pursuant to Final Order of the Bankruptcy Court prior to the Effective Date, or (ii) is subject to separate motion to assume or reject.   Notwithstanding the foregoing, any agreements, documents or instruments relating thereto that are postpetition contracts shall continue to operate unaffected by the Plan.  Nothing contained in the Plan shall constitute or be deemed to be a waiver of: (i) any Cause of Action that the Debtor may hold against any Entity or (ii) any defense the Debtor may have in the event that the rejection of an executory contract or unexpired lease by the Debtor pursuant to the Plan results in alleged damages to the other party or parties to an executory contract or lease.

8.2     Approval of Rejection of Executory Contracts and Unexpired Leases.  Entry of the Confirmation Order shall constitute the approval, pursuant to § 365(a) of the Bankruptcy Code, of the assumption of the executory contracts and unexpired leases assumed as of the Effective Date pursuant to the Plan.

14

## ARTICLE IX
## MODIFICATION OF THE PLAN

9.1     The Debtor may modify this Plan at any time prior to the Confirmation

Date as permitted by § 1127(a) of the Bankruptcy Code. If so modified, after the Debtor files the

modification with the Bankruptcy Court, the Plan as modified becomes the Plan.

9.2     The Debtor may modify this Plan at any time after the Confirmation Date

and before substantial consummation of this Plan as permitted by §§ 1101(2) and 1127(b) of the

Bankruptcy Code. The Plan as so modified under this subsection becomes the Plan only if the

Bankruptcy Court, after notice and a hearing, confirms such Plan as modified under § 1127 of

the Bankruptcy Code.

9.3     Before or after confirmation of the Plan or in the Confirmation Order, the

Debtor with the approval of the Bankruptcy Court may remedy any defect or omission, or

reconcile any inconsistencies in the Plan or amend the Plan, in such a manner as may be

necessary to carry out the provisions, purposes and effects of the Plan.

## ARTICLE X
## DISPUTED CLAIMS

10.1    Prior to or after the Confirmation Date, the Debtor may object to Claims

filed in or asserted against the Debtor or the Estate. All such objections must be filed no later

than sixty (60) days following the Effective Date of the Plan. In the event that an objection to a

Claim is pending at the time of any distribution to the Class of which such Claim is a member,

the Debtor will establish a reserve with respect to such Disputed Claim, which reserve shall

remain in place for all Disputed Claims until they become disallowed or are established as

Allowed Claims.

15

10.2    The Debtor may request that the Bankruptcy Court estimate any Disputed Claim pursuant to section 502(c) of the Bankruptcy Code for any reason, regardless of whether the Debtor previously objected to such Claim.  The Bankruptcy Court shall retain jurisdiction to estimate any such Claim, including during the litigation of any objection to any Claim or during the appeal relating to such objection.  In the event that the Bankruptcy Court estimates any contingent or unliquidated Claim, that estimated amount shall constitute a maximum limitation on such Claim for all purposes under the Plan (including for purposes of distributions).

### ARTICLE XI
### EFFECT OF CONFIRMATION

11.1    Release of Assets.  Following the Confirmation Date, jurisdiction of the Bankruptcy Court shall be limited to the subject matters set forth in Article XII of this Plan, and the Debtor shall perform his duties as provided in this Plan.

11.2    Binding Effect.  Except as otherwise provided in § 1141(d)(3) of the Bankruptcy Code, on and after the Confirmation Date, the provisions of this Plan shall bind any holder of a Claim against the Debtor and his respective successors and assigns, whether or not the Claim of such holder is Impaired under this Plan and whether or not such holder has accepted this Plan.  Confirmation of this Plan operates as an injunction against Creditors taking any actions against the Debtor in respect of Claims.

11.3    Discharge. Upon the completion of all distributions required under the Plan, the Debtor will be entitled to a discharge in accordance with § 1141(d)(5) of the Bankruptcy Code and shall make application for such discharge upon filing for a final decree to close the Bankruptcy Case.

11.5    Effect of Confirmation.  A discharge under the Plan does not discharge the Debtor from: (a) any debt excepted from discharge pursuant to §§ 523 and 1141(d)(2) of the Bankruptcy Code; nor (b) any and all post-petition tax obligations of the Debtor.

### ARTICLE XII
### RETENTION OF JURISDICTION

12.1    The Bankruptcy Court shall retain jurisdiction over the Estate through and including the date that: (i) all distributions on Allowed Claims have been satisfied in full in accordance with the provisions of this Plan and (ii) a Final Order is entered by the Bankruptcy Court closing the Bankruptcy Case.

12.2    The Bankruptcy Court shall also retain jurisdiction for the following purposes:

(a)    to take any action with respect to the subordination, allowance, disallowance, validity, perfection, setoff, enforcement or avoidance of Claims and liens, including, determination of objections to the allowance of Claims;

(b)    to determine any and all disputes arising under or in connection with the Plan;

(c)    to determine any and all applications for allowance of pre-Confirmation compensation and reimbursement of fees and expenses;

(d)    to determine any and all applications, adversary proceedings and contested matters pending in the case as of the Confirmation Date or filed thereafter;

(e)    to hear, determine and enforce any actions pursued by the Debtor or to authorize prosecution of same in such other courts as may be required by law;

(f)    to modify any provision of the Plan to the full extent permitted by the Code;

17

(g)     to correct any defect, cure any omission or reconcile any inconsistency in the Plan or the Confirmation Order as may be necessary to carry out the purposes, intent and effect of the Plan;

(h)     to determine such other matters as may be provided for in the Confirmation Order, or as may be authorized under the provisions of the Bankruptcy Code or otherwise deemed appropriate to accomplish the Plan's intent;

(i)     to enter any order, including injunctions, necessary to enforce the terms of the Plan and the rights and powers of the Debtor under the Bankruptcy Code, this Plan and as the Bankruptcy Court may deem necessary, including, but not limited to, issuing any orders appropriate under § 105 of the Bankruptcy Code;

(j)     to effectuate payments under, and performance of, the provisions of the Plan;

(k)     to enter an order pursuant to § 1141(d)(5) of the Bankruptcy Code granting a discharge to the Debtor;

(l)     to enter a Final Order closing the Bankruptcy Case; and

(m)     such other matters and acts for such other purposes as may be provided for in the Plan and/or the Confirmation Order.

## ARTICLE XIII
## CRAM DOWN

13.1     In order to confirm the Plan, among other things, the Debtor must establish that, in accordance with § 1129(a)(8) of the Bankruptcy Code, each Class of Claims either (i) has accepted the Plan or (ii) is not impaired under the Plan.  In the event that this requirement cannot be satisfied, however, and all other applicable requirements for confirmation under § 1129 of the Bankruptcy Code have been met, as long as the Plan does not discriminate

unfairly, and is fair and equitable, with respect to any Class of Claims that is impaired and has not accepted, the Plan, the Plan may be confirmed by the Bankruptcy Court.  If necessary to confirm the Plan, the Debtor will proceed by cram down.

### ARTICLE XIV
### MISCELLANEOUS

14.1    Upon the Confirmation Date, the entry of the Confirmation Order shall govern to the extent such prior orders are inconsistent with the terms or effect of the Plan.

14.2    The Debtor reserves the right to modify or withdraw the Plan at any time prior to entry of the Confirmation Order.

14.3    After entry of the Confirmation Order, the Debtor may modify the Plan to remedy any defect or omission or to reconcile any inconsistencies in the Plan or in the Confirmation Order, as may be necessary to carry out the purposes and effects of the Plan, provided that: (i) the Debtor obtains approval of the Bankruptcy Court for such modification, after notice and a hearing; and (ii) such modification shall not materially and adversely affect the interests, rights, treatment or distributions of any Class of Allowed Claims under the Plan.

14.4    Any post-confirmation fees of Professional Persons may be paid by the Debtor in the ordinary course, and without necessity for Bankruptcy Court approval.

*/s/John M. McPherson*
John M. McPherson

*Debtor and Debtor-in-Possession*

WHITEFORD, TAYLOR & PRESTON L.L.P.

*/s/Brent Strickland*
Brent Strickland (Bar No. 22704)
Paul M. Nussbaum (Bar No. 04394)
111 Rockville Pike, Suite 800
Rockville, Maryland 20850

19

bstrickland@wtplaw.com
pnussbaum@wtplaw.com


*Counsel for the Debtor and Debtor-in-Possession*