IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
(<u>Baltimore Division</u>)

| | | |
|---|---|---|
| IN RE: | * | |
| **JOHN MCDONNELL MCPHERSON,** | * | Case No.: 21-10205-MMH |
| | | (Chapter 11) |
| Debtor.    . | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**OBJECTION TO DEBTOR'S MOTION FOR APPROVAL OF POST-PETITION
FINANCING PURSUANT TO SECTION 364 OF THE BANKRUPTCY CODE**

Camac Fund, LP ("Camac"), by and through its undersigned counsel, Alan M. Grochal, Richard L. Costella, and Tydings & Rosenberg LLP, hereby objects to the Debtor's Motion for Approval of Post-Petition Financing Pursuant to Section 364 of the Bankruptcy Code (the "Motion"), and in support thereof, states as follows:

**Background**

1. On October 8, 2021, the Debtor filed the Motion (Dkt. 125).

2. On October 8, 2021, on the Debtor's request, this Court agreed to shorten the response time and schedule an expedited hearing on the Motion. (Dkt. 128).

3. Through the Motion, the Debtor seeks to borrow $41,225 on a senior secured basis[1] in order to pay the July invoice from the American Arbitration Association ("AAA").

4. The Debtor is borrowing the funds from his own company, Mihaly, McPherson and Signorelli, LLC ("MMS") in which the Debtor holds a 50% ownership interest.

---

[1] If Camac's lien extends to Research Sale Proceeds, as asserted by Camac in the pending arbitration, then the lender will have a junior secured lien on the Research Sale Proceeds.

1

**ARGUMENT**

While Camac does not quarrel with the fact that the Debtor needs to pay the AAA invoice, the timing of the Motion, and both the source of the loan and the terms of the loan, appear manufactured and highly suspicious. It also appears that the MMS loan may impair the Debtor's ability to continue to draw funds from MMS to help fund the Plan.

**I.      The Timing of the Motion.**

The Debtor has known that the arbitration was moving forward since June 1, 2021 (Dkt. 64) when this Court granted relief from the automatic stay to allow the arbitration to proceed. Presumably, his Counsel informed him that at some point in the foreseeable future he would be responsible for a fee to the AAA. Rather than attempt to set aside funds over the ensuing four (4) months after he was notified of the obligation and reduce the monthly payments to his wife, the Debtor has chosen to wait until the 11th hour to file the Motion and make it appear that he needs to borrow money on an emergency basis.[2] The "emergency funding" is contrived and solely a function of the Debtor's inaction.

**II.     The Source and Terms of the Loan.**

Although the Debtor represents that he is a fifty percent (50%) owner of MMS, it is apparent that he considers it to be his firm. In the Debtor's Third Amended Disclosure Statement (Dkt. 103), while he notes on page 4 that there is one other employee, he goes on to describe MMS in numerous places as "his firm." Dkt. 103, pages 8-9.[3] On February 8, 2021, the Debtor filed Official Form 426 regarding MMS (Dkt. 28) which makes clear that despite the Debtor's representation as a 50% owner of MMS, he takes out substantial amounts of money relative to his

---

[2] The AAA invoice is dated July 12, 2021, yet the Debtor waited until October 8, 2021 to file the Motion.
[3] In the various versions of the Disclosure Statement filed in this case, the Debtor indicates that his interest in MMS has no value.

2

partner, Gabe Mihaly (the Debtor took out at least $1,000,000 in 2019 as compared to Gabe Mihaly at $343,000). Camac has been seeking additional information regarding MMS to no avail as it suspects the Debtor is using MMS as an entity with which to obscure from Camac and the Court the Debtor's activities. *See* Objection of Camac Fund L.P. to Debtor's Amended Disclosure Statement. Dkt. 102, page 7. The Debtor draws $13,000 per month from MMS according to his monthly operating reports and pays $6000 per month to his wife. It is unclear whether MMS additionally pays for certain of the Debtor's expenses such as the Ashcroft law firm that is handling the arbitration for the Debtor and the Debtor's recent travel to Puerto Rico.

All of this inescapably leads to the conclusion that the Debtor is essentially borrowing money from himself. In such circumstances, allowing him to borrow money from himself on a secured basis with interest seems patently unfair to creditors.

Given that Form 426 shows the sole asset of MMS is roughly $164,000 in cash, it is abundantly clear that MMS is tantamount to the Debtor's personal bank account. According to this report, and notwithstanding the fact that the Debtor derives all of his income from MMS, MMS is insolvent, as of the filing of Form 426, owing roughly $215,000 to creditors. If this were not "his firm", it is doubtful that MMS would make a loan to the Debtor and place itself on the verge of filing bankruptcy absent additional revenues. Given the lack of any semblance of an arms-length transaction, the Debtor should simply have MMS pay the AAA invoice rather than concoct an elaborate loan scenario.

### III. The MMS Loan Jeopardizes the Debtor's Plan.

Approving the Motion appears to be put the Debtor's Plan in jeopardy. The Debtor represents that he draws $150,000 annually from MMS and this is one of the sources projected to fund the Plan. According to Form 426, MMS had slightly less than $164,000 as of December 31,

3

2020. We do not know whether MMS has generated additional cash since the Debtor has failed to provide updated information regarding MMS, but the monthly operating reports filed in this case show that the Debtor has drawn roughly $130,000 for the first ten (10) months of this year. Absent a significant increase in cash, it appears that lending the Debtor $41,225 could eliminate the ability of the Debtor to continue to draw funds from MMS and thereby undermine the Debtor's ability to fund the Plan.

Finally, one of the issues that is being arbitrated is whether the Debtor breached the Funding Agreement by misdirecting at least $900,000 received in the General Electric matter to MMS. If this issue is decided in Camac's favor then MMS would be loaning Camac's collateral to the Debtor to pay the AAA invoice.

## **CONCLUSION**

Through the Motion, the Debtor seeks to borrow money from "his firm" on a senior secured basis. This is not an arms-length transaction and the notion of granting MMS a lien and paying MMS interest at the expense of creditors, is insulting. The Motion should be denied. The Debtor should simply have MMS pay the AAA Invoice.

Dated: October 14, 2021.                            Respectfully Submitted,

/s/ Alan M. Grochal
Alan M. Grochal, Bar No.: 01477
Richard L. Costella, Bar No.: 14095
Tydings & Rosenberg LLP
One E. Pratt Street, Suite 901
Baltimore, Maryland 21202
Phone: (410) 752-9753
Fax: (410) 727-5460
Email: agrochal@tydings.com
          rcostella@tydings.com

*Attorneys for Camac Fund, L.P.*

4

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 14th day of October, 2021, a copy of the foregoing ***OBJECTION TO DEBTOR'S MOTION FOR APPROVAL OF POST-PETITION FINANCING*** was served via the Court's ECF filing system on the following:

Brent C. Strickland, Esq.
Paul M. Nussbaum, Esq.
Whiteford Taylor & Preston, LLP
111 Rockville Pike, Suite 800
Rockville, Maryland 20850
bstrickland@wtplaw.com
pnussbaum@wtplaw.com

James Daniel Ford, Jr. (UST)
Office of the U.S. Trustee
101 West Lombard Street, Suite 2625
Baltimore, Maryland 21201
j.dan.ford@usdoj.gov

Laura S. Bouyea, Esquire
Venable LLP
750 East Pratt Street, Suite 900
Baltimore, Maryland 21202

/s/ Alan M. Grochal
Alan M. Grochal